IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DAVID T. COOPER | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| REGINALD ROBERTS, et al. | : | NO. 08-346 |

Goldberg, J.                                                 September 16, 2009

## MEMORANDUM OPINION

Plaintiff David T. Cooper, pro se, has brought this § 1983 action against Defendants Reginald Roberts, Barry L. Grimm, Raymond J. Havrilak, Steven L. Hatfield, and Dennis Powell[1] for alleged constitutional violations. The allegations include the use of excessive force during Plaintiff's arrest and the subsequent illegal search of his residence. Before the Court are three motions: Grimm, Hatfield and Havrilak's Motion for Partial Summary Judgment; Roberts's Motion for Partial Summary Judgment; and Powell's Motion for Summary Judgment.

For the reasons articulated below, Defendants' motions for summary judgment will be granted in part and denied in part. Specifically, trial shall proceed on Plaintiff's claims for excessive force against Defendant Roberts and for the failure to intervene to prevent excessive force against Defendant Powell, in his individual capacity, and Defendants Grimm, Havrilak and Hatfield. All of Plaintiff's other claims are dismissed.

---

[1] Roberts is a Montgomery County Detective; Powell is a Pennsylvania Parole Agent; and Grim, Havrilak, and Hatfield are all Pottstown Borough Police Officers.

1

## I. Factual and Procedural Background

The facts of record, viewed in the light most favorable to Plaintiff, are as follows:

On February 17, 2006, Plaintiff, using his cell phone, arranged to meet with Justin Olinger, at Olinger's home in Pottstown, Pennsylvania. Plaintiff drove himself there, in a vehicle owned by Esther Saunders, who also owned the residence where Plaintiff resided at the time. Upon arrival, Olinger presented Plaintiff with a large quantity of cocaine and requested that Plaintiff assist him in its distribution. Plaintiff claims that he turned down Olinger's proposal, but before he could leave, Defendants' Powell, Grimm, Hatfield, Havrilak, and Roberts stormed the apartment with guns drawn and pointed at Plaintiff. (Am. Complaint, ¶ 2; Cooper Dep., pp. 149-159, 167-191; Saunders Dep., p. 74.)

Plaintiff admits that he had to be asked three times to get on the ground and place his hands above his head before he complied. Once on his knees, Plaintiff alleges that Roberts forcefully grabbed him by the neck and "slam[med]" him to the floor. Plaintiff further claims that Roberts then placed his knee on the middle part of his back, pinning him to the floor while two officers secured his arms and attempted to handcuff him. (Cooper Dep., pp. 190-195.)

Before he was handcuffed, Plaintiff's breathing became impaired as a result of Roberts's weight on his back. Plaintiff attempted to inform the officers that he could not breathe and that he suffered from asthma. When Plaintiff's repeated attempts to receive relief from this restraint proved ineffective, he began "wiggling" so that he could breathe easier. In response, Plaintiff alleges that Roberts punched him twelve (12) times in his mid-section. In pain, Plaintiff then curled up into a fetal position and cooperated with Roberts's efforts to handcuff him. Hospital reports later confirmed that Plaintiff suffered multiple rib fractures. (Cooper Dep., pp. 199-205; Pottstown Memorial Medical Center Records.)

After Plaintiff had been successfully restrained, Defendant Powell, a Parole Agent, took possession of his keys and, without a warrant or consent, entered his residence in Collegeville, Pennsylvania, which was owned by Saunders. During the search of the residence, Powell allegedly stole some of Saunders's personal property. Meanwhile, at the police station, Plaintiff was presented with a series of charges which he alleges were fabricated. However, Plaintiff ultimately pled guilty to conspiracy to manufacture, sell, deliver, or possess a controlled substance. (Am. Complaint, ¶ 2; Cooper Dep., pp. 207-208, 227-229; Saunders Dep., pp. 48-49, 59-63; Montgomery Court of Common Pleas Criminal Docket.)

At the time of the incident, Plaintiff was on parole and subject to a number of parole conditions, which included: (1) consent to the search of his person, property or residence, without warrant by agents of the Pennsylvania Board of Probation and Parole;[2] (2) abstainment from the unlawful possession or sale of narcotics; and (3) prohibition from possessing a cell phone and using a vehicle without prior permission. (Cooper Dep., pp. 275-276; Exhibits to Depositions, p. 15.)

Plaintiff filed a pro se complaint against Defendants on March 12, 2008.[3] He then filed an amended complaint on August 26, 2008, alleging several claims under § 1983 for violations of his Fourth, Eighth and Fourteenth Amendment rights. Plaintiff's amended complaint raises claims against Defendants in both their individual and official capacities. Specifically, Plaintiff alleges that: (1) Defendants subjected him to unlawful excessive force during his arrest; (2) he was falsely arrested by Defendants without probable cause; (3) Defendants unlawfully searched his residence following the arrest; (4) he was unlawfully discriminated against in violation of the

---

[2] Saunders, the owner of Plaintiff's residence, also consented to the search of the premises without warrant. (Saunders Dep., pp. 20-21.)

[3] The original complaint was filed by Plaintiff and Saunders. Saunders, however, is not a party to this action because she did not pay the filing fee and was not granted permission to proceed in forma pauperis. (Order, March 11, 2008.)

Fourteenth Amendment Equal Protection Clause; and (5) property belonging to Saunders was stolen during Defendants' search of her home.

Defendants Havrilak, Grimm, and Hatfield jointly filed a motion for summary judgment on December 4, 2008. Roberts moved for summary judgment on January 16, 2009, and Powell likewise filed for summary judgment on January 20, 2009.

## II. Summary Judgment Standard

A motion for summary judgment may be granted only, "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This initially requires the court to determine whether the moving party has demonstrated that there is no dispute concerning the factual resolution of an essential element of the cause of action. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party carries the initial burden of demonstrating there is no genuine issue of material fact, then the non-moving party, to withstand a motion for summary judgment, must "come forward with specific facts showing there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In doing so, a district court must consider the evidence presented by the moving party and draw all reasonable inferences in favor of the non-moving party. Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999). Additionally, all doubts must be resolved in favor of the non-moving party. Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 (3d Cir. 1983).

## III. Discussion

### A. Section 1983 Claims Generally

Section 1983 does not itself establish any particular federally protected right but instead acts as a vehicle through which an injured person may raise a claim against an individual who, acting under color of state law, violated the rights afforded to that injured person by the Constitution or a federal statute. 42 U.S.C. § 1983. A prima facie § 1983 claim exists where the plaintiff alleges both a deprivation of a federal right and demonstrates that the person who deprived the plaintiff of that right acted under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). A defendant acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Id. at 49 (citing United States v. Classic, 313 U.S. 299 (1941)). Section 1983 is indifferent to the state of mind of the official who allegedly deprived a plaintiff of the federally protected right. Parratt v. Taylor, 451 U.S. 527, 534 (1981).

### B. Excessive Force

*(i) Plaintiff's Eighth Amendment Claim*

Plaintiff presents his excessive force claims as a violation of the Eighth Amendment. However, the Eighth Amendment's prohibition against cruel and unusual punishment applies only to individuals who have already been convicted of a crime. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (holding that the Eighth Amendment applies only after the state "has secured a formal adjudication of guilt in accordance with the due process of law"). While Plaintiff is unable to rely on the Eighth Amendment in this context, he may present his excessive force claim as a violation of the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 395 (1989) (holding that all claims of excessive force in the context of an arrest should be

analyzed under the Fourth Amendment and its reasonableness standard). Thus, we will consider the merits of Plaintiff's excessive force claim under the Fourth Amendment.

*(ii) Excessive Force under the Fourth Amendment*

To determine whether Defendants used excessive force, the inquiry is whether Defendants' actions were objectively reasonable in light of the facts and circumstances with which Defendants were confronted. Id. at 397. The use of force should be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," while recognizing that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary." Id. at 396-97.

In considering the unique facts and circumstances of each case, the Court will consider: the severity of the crime at issue; whether the suspect posed an immediate threat to the safety of the officers or others; and whether he was actively resisting arrest or attempting to evade arrest by flight. Id. at 396. The Third Circuit has provided additional factors to consider, including whether the action took place in the context of effecting an arrest, the possibility that the suspect may have been armed, and the number of persons with whom the police officers had to contend with at one time. Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

*(iii) Defendant Roberts*

Plaintiff identifies two instances of physical conduct by Roberts, which may constitute excessive force: (1) the force used to take Plaintiff to the ground; and (2) the series of punches thrown after Plaintiff was on the ground. Specifically, in his deposition, Plaintiff testified that Roberts grabbed his neck and "slam[med]" him into the ground, despite Plaintiff having already retreated to his knees and placed his hands in the air. (Cooper Depo., p. 193.) Roberts, however,

recounts delivering a single blow to Plaintiff's side causing Plaintiff to fall to the floor. (Roberts Aff., ¶ 10.) We find that a genuine issue of material fact exists regarding how Roberts forced Plaintiff to the ground. Further, a jury could reasonably determine that Robert's actions were unnecessary given the circumstances. See Autrey v. City of Lancaster, 2003 U.S. Dist. LEXIS 7694, at *22-24 (E.D. Pa. Apr. 16, 2003) (concluding that a jury might find defendant officers' force excessive when an officer tackled a fleeing arrestee after the arrestee had stopped running and was standing still).

Plaintiff also states that Roberts placed his weight on Plaintiff's back in such a way that prevented Plaintiff from breathing, a situation worsened by Plaintiff's asthmatic condition. After Plaintiff's pleas regarding his inability to breathe went unanswered by Defendants, Plaintiff attempted to reposition his body. Thereafter, Roberts purportedly punched Plaintiff twelve (12) times, with such force as to fracture Plaintiff's ribs.

Roberts's version of the events, again, differs substantially from Plaintiff's. Roberts claims there was "an intense struggle" involving an "enraged" Cooper who was "shouting threats at the confidential informant, attempting to break free, forcefully resisting arrest and refusing to obey Police commands." (Roberts Aff., ¶ 9.) Roberts characterizes Plaintiff's behavior as "forcefully aggressive" and insists Plaintiff "continued to fight with Police" throughout the struggle. (Roberts Aff., ¶ 10.) Further, Roberts insists that "any injurious contact was incidental in nature." (Roberts Summ. J. Mot., p. 8.)

In light of the parties' divergent recollection of the events, an additional material factual dispute exists as to whether Plaintiff was resisting arrest when Roberts struck him and whether the punches were excessive. Therefore, we decline to grant summary judgment for the excessive force claims. Rosenberg v. Homoki, 2009 WL 982146, at *7-8 (E.D. Pa. Apr. 9, 2009) (denying

7

a motion for summary judgment in light of a factual dispute as to whether the plaintiff was resisting arrest when struck by the defendant); Peschko v. City of Camden, 2006 WL 1798001, at *5 (D. N.J. Jun. 28, 2006) (finding that "a reasonable jury could find that the defendant officers used excessive force in effecting [plaintiff's] arrest, especially considering his claim that he did not resist arrest once on the ground"); Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004) (holding that the reasonableness of the use of force is normally an issue reserved for the jury).

*(iv) The Remaining Defendants[4]*

Plaintiff's deposition identifies Roberts as the only individual using potentially excessive force. According to the deposition, Plaintiff only came in physical contact with two other Defendants, and this contact involved the restraint of his arms while two officers attempted to handcuff him. See Graham, 490 U.S. at 396 ("the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it" (citing Terry v. Ohio, 329 U.S. 1, 22-27 (1968))).

Under Plaintiff's version of the facts, however, Defendants Powell, Grimm, Havrilak, and Hatfield face potential liability under § 1983 for standing by while Roberts used excessive force. "Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if that excessive force is employed by a superior." Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002). An officer is directly liable under § 1983 if that officer, "whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence." Byrd v.

---

[4] Plaintiff's Amended Complaint alleges that he was kicked, stomped, and punched by the remaining Defendants for a period of three to five minutes. These allegations, however, are not supported by Plaintiff's deposition. As Plaintiff cannot rely on the allegations in the complaint to defeat a motion for summary judgment, we will not consider these allegations in deciding the motions. See Fed. R. Civ. P. 56(e)(2).

Clark, 783 F.2d 1002, 1007 (11th Cir. 1986); Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981). However, "an officer is only liable if there is a realistic and reasonable opportunity to intervene." Smith, 293 F.3d at 651 (citing Clark, 783 F.2d at 1007; Putman, 639 F.2d at 423-424). Thus, to the extent that a fact-finder concludes that the force employed by Roberts was excessive, there also exists genuine issues of fact as to whether the remaining Defendants were in a position to intervene and, if so, whether they acted reasonably in failing to intervene. Consequently, we deny the remaining Defendants' motions for summary judgment regarding Plaintiff's excessive force claim.

*(v) Defendant Powell - Qualified Immunity*

Powell contends that he is immune in his individual capacity from all of Plaintiff's claims pursuant to the doctrine of qualified immunity. This doctrine exists to protect government officials exercising good faith in their discretionary duties from the unreasonable burdens of trial. Harlow v. Fitzgerald, 457 U.S. 800, 817-818, (1982); Boria v. Bowers, 2009 WL 902421, at *7 (E.D. Pa. Mar. 31, 2009).[5] The court is encouraged to address the issue of qualified immunity at the earliest possible stage in the proceedings, as the privilege is "an immunity from suit rather than a mere defense to liability." Pearson v. Callahan, 129 S.Ct. 808, 818 (2009) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). However, ruling on qualified immunity at an early stage is often not practical because "the importance of resolving qualified immunity questions early 'is in tension with the reality that factual disputes often need to be resolved before determining whether Defendant's conduct violated a clearly established

---

[5] The Supreme Court has constructed a two-step test for determining whether a defendant is entitled to qualified immunity. First, the court is tasked with determining whether the facts alleged show the officer's conduct violated a constitutional right. Second, assuming such a violation is found, the court must analyze whether the right that was violated was a clearly established right. See Saucier v. Katz, 533 U.S. 194, 201-202 (2001). Although the Supreme Court has since relaxed this rigid two-step test, the Saucier method of analysis may still be used when appropriate. See Pearson v. Callahan, 129 S.Ct. 808, 818 (2009).

9

constitutional right.'" Phillips v. County of Allegheny, 515 F.3d 224, 242 n.7 (3d Cir. 2008) (citing Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002)).

When analyzing qualified immunity, it is clear that the normal principles of summary judgment apply, thus rendering it "inappropriate to grant summary judgment if there are material factual disputes as to whether a constitutional violation has occurred or whether the constitutional right is clearly established." Boria, 2009 WL 902421, at *8 (citing Curley v. Klem, 499 F.3d 199 (3d Cir. 2007)). As outlined above, we find that there are genuine issues of material fact as to whether Roberts used excessive force and whether the remaining Defendants, including Powell, acted unreasonably for failing to intervene. We, therefore, decline to grant summary judgment based upon qualified immunity.

*(vi) Defendant Powell - Eleventh Amendment Immunity*

Powell also argues that the Eleventh Amendment bars suit against him in his official capacity. States and state officers acting in their official capacity are immune from suits for damages in federal court, but a plaintiff may bring a suit for damages against municipalities and other political subdivisions of a State. Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598 n.10 (2001). As an employee of the Pennsylvania Board of Probation and Parole, Powell is indeed protected from suit in his official capacity. See Harris v. Zappan, 1999 WL 360203, at *2 (E.D. Pa. May 28, 1999) (holding that the Pennsylvania Board of Probation and Parole is entitled to assert Eleventh Amendment protection and claims brought against its employees in their official capacity are barred). The Eleventh Amendment, however, does not offer protection to the other Defendants. Therefore, Plaintiff's claims against Powell in his official capacity will be dismissed.

**C. False Arrest and the Absence of Probable Cause**

Plaintiff also claims he was falsely arrested without probable cause and presented with "fabricated" charges after having been arrested. Under Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court has barred convicted criminals from bringing a suit under § 1983 that called into question the validity of their state court convictions without establishing that the conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. Id. at 486-87. Here, Plaintiff pled guilty to the relevant criminal charges and has not established that the conviction has been reversed, expunged, or declared invalid. (Cooper Dep., p. 283.) In light of the fact that Plaintiff has not successfully challenged his conviction, the Court grants Defendants' motions for summary judgment as to the false arrest claim.

**D. Unlawful Search of Residence.**

Plaintiff also alleges his residence was unlawfully searched following his arrest. Because parolees have a lesser expectation of privacy and the government has a heightened need to monitor their behavior, "no more than reasonable suspicion" is needed to legally search a parolee's residence. United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005). A law enforcement officer is empowered to conduct a warrantless search of a parolee's property based on reasonable suspicion that the parolee has violated a condition of parole, even if the parolee is already in custody. United States v. Strickland, 237 Fed.Appx. 773, 777 (3d Cir. 2007) (citing United States v. Baker, 221 F.3d 438, 443-45 (3d Cir. 2000)); United States v. Hill, 967 F.2d 902, 907-11 (3d Cir. 1992); United States v. Williams, 70 Fed.Appx. 632, 633 (3d Cir. Pa. 2003)

(finding a warrantless search of a defendant's home was justified where parolee was observed to be driving a vehicle and using a beeper, both violations of his parole).

It is undisputed that Plaintiff was on parole and subject to certain conditions regarding drugs, cell phone use and the use of a vehicle. Further, it is undisputed that Plaintiff was arrested in the presence of a large quantity of cocaine and was driving a car and using a cell phone. Law enforcement officers, therefore, had more than a reasonable suspicion that Plaintiff was violating his parole. Furthermore, both Plaintiff and Saunders had expressly consented to searches of their residence by the Parole Board. Therefore, Plaintiff's claim against Powell for the alleged unlawful search must be dismissed.

**E. Equal Protection Clause**

Plaintiff also claims he was unlawfully discriminated against in violation of the Fourteenth Amendment Equal Protection Clause. The Equal Protection clause directs that all persons similarly situated should be treated alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Where a plaintiff has not alleged membership in a class or group, an Equal Protection claim may be brought on behalf of a "class of one," which requires a plaintiff to demonstrate that they were treated differently than others similarly situated without any rational basis. See Village of Willowbrook v. Grace Olech, 528 U.S. 562, 564 (2000). Here, Plaintiff has not alleged membership in a class of group, and neither the complaint nor Plaintiff's deposition provide any factual support for his claim. Further, Plaintiff cannot rely merely on allegations contained in his own pleading. Rather, his response must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). Defendants' motions for summary judgment on the Equal Protection claim must, therefore, be granted in light of the absence of any facts relating to discrimination.

**F. Stolen Property**

According to Plaintiff, during the search of his residence, Defendants ransacked his home and stole some of Saunders's personal property. (Am. Complaint, ¶ 2; Saunders Dep., pp. 69-73.) This claim must fail because Saunders is not a party to this action, and Plaintiff has no standing to bring suit regarding property belonging to Saunders. Thus, we grant Defendants' motions for summary judgment on this claim.

## IV. Conclusion

For the foregoing reasons, Defendants' motions shall be granted in part and denied in part. Our Order follows.